UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:07CV-P676-S

JOE A. BROWDER, JR.                                                              PLAINTIFF

v.

SCOTT HAAS *et al.*                                                              DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on the sole remaining Defendant, Scott Haas's motion for summary judgment (DN 87). Fully briefed, this matter is ripe for decision. For the reasons that follow, the Court will grant Defendant Haas summary judgment.

I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

"'[W]here the moving party has the burden -- the plaintiff on a claim for relief or defendant on an affirmative defense -- *his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.*'" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)

(emphasis in original)). "[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quoting 11 James Wm. Moore, et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000)). Thus, "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Id.* The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

## II. PROCEDURAL AND FACTUAL HISTORY

This is a civil rights action filed by Plaintiff Joe A. Browder, Jr., an inmate currently incarcerated at the Eastern Kentucky Correctional Complex in West Liberty, Kentucky. As explained in more detail below, this action involves the manner in which Plaintiff's Hepatitis B and C infections have been handled during his incarceration. The sole remaining Defendant in this action is Dr. Scott Haas, the Medical Director for the Kentucky Department of Corrections.

Browder alleges that he has not received the type of treatment that he believes is

necessary for his Hepatitis B and C infections in violation of the Eighth Amendment. Plaintiff asserts in his complaint that he contracted Hepatitis C in 1979 and is a carrier of the antibody. He indicates that he was scheduled to begin treatment at the VA in 2004, but was arrested before the treatment started. He also asserts that he was received at Roederer Correctional Complex in June of 2005, at which time he tested positive for Hepatitis B and C. He indicates that he requested treatment when he was incarcerated at Blackburn Correctional Complex in January 2006 and that Defendant Haas denied his grievance appeal. He also states that he requested treatment at Eastern Kentucky Correctional Complex, but that treatment was denied by the "Department of Corrections medical administrator for nonmedical reasons." He alleges that he is eligible for

genotyping, biopsy and combination therapy, but that Corrections staff are denying him treatment.

In support of his motion for summary judgment, Defendant Hass has filed two affidavits with the Court, one from himself and the other from Dr. Steven Shedlofsky, Professor of Internal Medicine in the Division of Digestive Diseases and Nutrition at the University of Kentucky College of Medicine, explaining the treatment and ultimate diagnosis assigned to Browder by the Department of Corrections.

> Dr. Haas avers as follows:
>
> Mr. Browder contends that he was diagnosed by the VA Medical Center with Hepatitis C. However, a VAMC medical noted dated July 29, 2004 @13:48 (attached to the complaint) indicates that he tested positive for the Hepatitis C antibody. This test indicates that he has been exposed to the Hepatitis C virus but does not necessarily indicate that he has an active Hepatitis C infection, or that he is an active carrier of the Hepatitis C virus. Antibodies are produced by an individual as a response to a foreign protein, in this case, the Hepatitis C virus. A subsequent test performed specifically to detect the presence of Hepatitis C RNA was conducted on October 15, 2007, and found to be negative. This negative test indicates that Mr.

Browder had no detectable Hepatitis C viruses circulating in his blood stream. In addition, other tests that specifically indicate liver damage when elevated (AST, ALT, LDH) revealed normal levels. Furthermore, the presence of adequate serum proteins and albumin also indicate that the liver is functioning without impairment. All combined, these tests demonstrate with reasonable medical certainty, that Joseph Browder does not have an active Hepatitis C infection. In the absence of active Hepatitis C infection there is no medical indication to provide treatment. This has been explained on numerous occasions to Mr. Browder.

Dr. Haas also avers that he never directly treated Browder. His only contact on Browder's case was via the medical grievance process.

Dr. Shedlofsky avers:

I am responsible for the development of the current Kentucky Department of Corrections Hepatitis Management Plan, which has been in place since 2002. I reviewed portions of the medical record for inmate Joseph Browder, #186407, in order to prepare this affidavit. He came to my attention on April 25, 2006, at which time I determined that he was not eligible for further evaluation or treatment of Hepatitis C because his next parole eligibility date was only six months away. We require inmates have at least 12 months to serve before embarking on evaluation and therapy given the time it takes to perform the required testing and given that therapy may take up to 48 weeks. However, when he was not paroled in September 2006, we looked at his liver tests, specifically the alanine aminotransferase (ALT) and discovered that his ALTs had been normal on several occasions since June 2005. The Hepatitis C Management Plan only allows Hepatitis C infected inmates with elevated ALT levels to pursue further evaluation and receive therapy. This is because only a minority (about 20%) of individuals with Hepatitis C develop life-threatening liver damages. And patients with persistently normal ALT values almost never develop liver failure.

But relevant to Mr. Browder's case, he was discovered to have a negative Hepatitis C RNA on 10/18/2007. This indicates that he had spontaneously cleared the Hepatitis C infection at some time in the past and was no longer infected. A negative Hepatitis C RNA essentially rules out a clinically significant Hepatitis C infection with a very high sensitivity and specificity. Such patients will continue to have a positive HCV antibody study, as is the case with Mr. Browder. Although the patient asserts that a negative Hepatitis C RNA does not always rule out infection, the situations in which a patient would have a low level of Hepatitis C present, but below the limit of detection of the RNA assay, are few. This might occur during antiviral therapy. But because Mr. Browder wasn't undergoing antiviral therapy, the negative Hepatitis C RNA result indicates that he is no longer infected. He does not require further evaluation or therapy for Hepatitis C.

4

Mr. Browder was also asserting that he required evaluation and possible therapy for Hepatitis B. However, laboratory reports from 6/21/05 indicate that Mr. Browder had a negative Hepatitis B surface antigen study and a positive total antibody to Hepatitis B core antigen. All patients with an active Hepatitis B infection will continue to have detectable Hepatitis B surface antigen in their blood. But after the infection is cleared from the liver, the patient loses the surface antigen and continues to have detectable anitbody to the hepatitis B core protein for the rest of his or her life. Therefore, Mr. Browder's test results indicate that he is naturally immune to Hepatitis B because [he] had a Hepatitis B infection in the past and cleared it on his own. He therefore needs no further evaluation or treatment for Hepatitis B.

In summary, Mr. Browder had previous infections with both Hepatitis C and Hepatitis B. But his immune system successfully cleared both viruses from his body. He does not require further evaluation or treatment of either Hepatitis viral agent.

Browder vehemently disagrees with these assertions. He remains steadfast in his conviction that he has active Hepatitis B and C infections and needs immediate treatment. He fears his lack of treatment while in the Kentucky Department of Corrections's custody may have irreversibly damaged his liver. However, Browder has not come forward with any credible evidence to contradict Drs. Haas and Shedlofsky.

### III. ANALYSIS

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment."

5

*Id.* (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

A.     **Defendant Haas's Role in Browder's Care**

It is undisputed that Defendant Haas's only role in Browder's case was via the prison grievance system. Defendant Haas's adjudication of Plaintiff's medical grievances does not subject him to liability under § 1983. There is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th

Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."). Thus, where the only allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged denial of medical treatment. *Id.*

**B.     Defendant Haas's role as Medical Director**

Defendant Haas's position as Medical Director does not automatically make him liable for the actions of his subordinates. "Respondeat superior[1] is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In other words, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee,* 199 at 300. "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003). Thus, the fact that Defendant Haas as Medical Director was aware of Browder's complaints is not enough to subject him to liability under § 1983. *See, e.g.*, *Brown v. Green*, No. 97-1117, 1997 U.S. App. LEXIS 35331 (6th Cir. Dec. 12, 1997) ("Defendant Green, being sued in her official capacity as

---

[1]Respondeat superior is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

7

the Medical Director of the Michigan Department of Corrections, cannot be held liable for an alleged constitutional violation, because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel."); *Farrow v. West*, 320 F.3d 1235, 1238 n.1 (11th Cir. 2003) (holding that the regional director of prison medical services was not liable for actions of subordinate medical staff).

**C.     Difference of Opinion as to Diagnosis & Treatment**

Essentially this case boils down to one issue--Plaintiff disagrees with Drs. Haas and Shedlofsky, that he does not have active Hepatitis B and C infections, and therefore, does not require treatment at this time. "Deliberate indifference, however, does not include negligence in diagnosing a medical condition." *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995). Moreover, differences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not state an Eighth Amendment claim. *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, the plaintiff has received some medical attention, but disputes the adequacy of that treatment, a federal court will not second-guess the medical judgments of prison officials and constitutionalize claims which sound in state tort law. *Id.*

In summary, Defendant Haas is entitled to summary judgment because it is undisputed that his only role in Browder's case was reviewing his grievances. Additionally, at most, Browder has shown a disagreement as to his diagnosis and treatment which is not cognizable under the Eighth Amendment.

**IV. ORDER**

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Scott Haas's motion for summary judgment (DN 87) is **GRANTED**. By separate Order, the Court

will direct the Clerk to enter summary judgment in favor of Defendant Haas.

Date:

cc: Plaintiff, *pro se*
    Counsel of record
4411.008